UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPHEYR, INC.,

                Plaintiff,

– against –

BROOKLYN MINDS PSYCHIATRY P.C.,

                Defendant.

**OPINION & ORDER**

22-cv-8427 (ER)

RAMOS, D.J.:

    Spheyr, Inc. ("Spheyr"), a Delaware corporation, brings this action against Brooklyn Minds Psychiatry P.C. ("Brooklyn"), a New York corporation, for recovery on a promissory note. Doc. 5. Spheyr seeks judgment in the sum of $464,444.53 plus interest, based on an initial principal balance of $451,000.00 plus already-accrued interest. *Id.* ¶¶ 8–30. In short, Spheyr alleges that Brooklyn failed to pay the amounts due on the note, which was accelerated according to its terms due to a change of control of Brooklyn. *Id.* ¶¶ 1, 18. Brooklyn argues that the note is unenforceable and unconscionable, *see generally* Doc. 22, and it further requests that the Court allow the parties to proceed to discovery, *id.* at 25–30; *see also* Wolcowitz Decl., Doc. 23.

    Before the Court is Spheyr's motion for summary judgment. Docs. 16–18. For the reasons set forth below, consideration of the motion is DEFERRED pursuant to Federal Rule of Civil Procedure 56(d), and the parties are directed to proceed to discovery.

I.  **BACKGROUND**

   A. **Factual Background**

Spheyr is a concierge medical service founded by Dr. Owen Muir, a psychiatrist, and David Balinski,[1] Pl.'s Rule 56.1 Statement, Doc. 16-1 ¶ 7, and Brooklyn is a medical psychiatry practice founded in 2016, *id.* ¶ 10.  Brooklyn is currently owned by Dr. Amanda Itzkoff.[2]  Doc. 17-6 at 1.  However, at the time the instant note was executed, Brooklyn was co-owned by Muir, co-owner of Spheyr, and his wife, Dr. Carlene MacMillan, who is also a psychiatrist.  Pl.'s Rule 56.1 Statement, Doc. 16-1 ¶¶ 8, 11.  Spheyr engaged Brooklyn to provide psychiatric services to the employees of Spheyr's clients in several states, including Delaware, Wisconsin, New Jersey, Pennsylvania, and New York.  *Id.* ¶ 10; *see id.* ¶¶ 7, 8.

Brooklyn executed the instant promissory note on September 28, 2021.[3]  Doc. 5 ¶ 7.  According to the note, as of that date, Spheyr had loaned Brooklyn $451,000.[4]  *Id.* ¶ 8; Doc. 5-1 at 2.  The note provided, in relevant part, as follows:

---

[1] Spheyr was "still a start-up" in 2021, having been founded in 2020 by Muir and Balinski.  Pl.'s Rule 56.1 Statement, Doc. 16-1 ¶ 16.

[2] Per the purchase agreement, Itzkoff owns Brooklyn.  Doc. 17-6 at 1.  To be clear, the agreement states that Brooklyn's purchaser is a corporation named Mind Centers II LLC ("MC II").  *Id.*  For the sake of clarity, however, the Court refers to Itzkoff as the owner of Brooklyn, given that all shares were transferred to her through the agreement.  *Id.*

[3] As relevant here, as of September 16, 2021, another entity named Mind Centers Inc. ("MCI") owed $400,000.00 to Spheyr.  Pl.'s Rule 56.1 Statement, Doc. 16-1 ¶ 48.  According to Spheyr, MCI "is a company related to Brooklyn."  *Id.* ¶ 24.  As set forth below, Itzkoff contends that this was the *only* loan related to Spheyr that was disclosed to her when she purchased Brooklyn in April 2022.  Def.'s Rule 56.1 Statement, Doc. 21 ¶ 48; *see also* Doc. 17-6 at 19.

Also in September 2021, Muir told Balinski that he was looking to sell Brooklyn.  Balinski Aff., Doc. 17 ¶ 24 (Balinski stating that Muir was negotiating a sale of Brooklyn in September 2021 and that "a three-year [maturity] term was provided [in the note], with the hope that Brooklyn would be sold in September, or shortly thereafter," and Spheyr would be quickly paid because the sale would trigger the change of control provision of the note).

[4] According to Spheyr, between August 2020 and September 2021, Muir asked Spheyr to lend Brooklyn money on several occasions to meet its payroll expenses.  Doc. 5 ¶¶ 19–22.  Pursuant to these loans, Spheyr contends, Brooklyn borrowed $451,000, and the promissory note was thus executed to ensure that Spheyr would be paid back.

2

## **PROMISSORY NOTE**

$451,000.00

FOR VALUE RECEIVED, pursuant to the terms of this Promissory Note . . . the undersigned, BROOKLYN MINDS, P.C., . . . promises to pay to the order of SPHEYR, INC., . . . the aggregate sum of . . . ($451,000.00), with interest accruing from the date hereof on the unpaid balance [] at the fixed rate of . . . (6.50%) per annum, compounding on an annual basis . . . . Interest will be calculated on the unpaid principal balance on the date of each payment . . . and each payment hereunder shall be applied first to the discharge of accrued interest and second to the payment of principal.

1. <u>Payment Obligation</u>.  No payments shall be due under this Note prior to the three (3) year anniversary hereof (the "<u>Maturity Date</u>").

Doc. 5-1 at 2.

Pursuant to the note, upon a default, the interest rate would increase to 10% per annum from the date of default.  Pl.'s Rule 56.1 Statement, Doc. 16-1 ¶ 28; Doc. 5-1 at 2–3 ¶¶ 4, 6.  The note specified that a change of control would trigger a default.[5]  *Id.* at 2 ¶ 4.  Additionally, the note included a confession of judgment provision wherein Brooklyn was bound to confess judgment in favor of Spheyr and waive its right to vacate that judgment.  *Id.* at 3–4 ¶ 11.  It also included a waiver of Brooklyn's right to independent counsel.  *Id.* ¶ 21.

---

Itzkoff argues that she cannot confirm at this juncture that Spheyr indeed advanced that amount to Brooklyn.  *E.g.*, Def.'s Rule 56.1 Statement, Doc. 21 ¶ 40.  She further notes that, according to Brooklyn's records, the alleged loan proceeds were actually made to "an unidentified company" called "Brooklyn Gate Bridge," which is not a party to the note.  *Id.*  Indeed, the note only mentions value received by Brooklyn Minds, P.C.  Doc. 5-1 at 2.  Itzkoff further contends that she cannot confirm that Brooklyn Gate Bridge transferred any proceeds to Brooklyn's accounts.  Doc. 22 at 6.  According to Spheyr, Brooklyn Gate Bridge is the former name of MCI, which is "related to" Brooklyn.  Reply Balinski Aff., Doc. 24 ¶ 5(E).

[5] The note further provided that in the event of a default, the Spheyr would be entitled to collect reasonable costs, expenses, and attorneys' fees incurred in collection of the note.  Doc. 5-1 at 3 ¶ 9.  It also provided that the note was to be governed in accordance with the laws of the state of Delaware.  *Id.* ¶ 10.  Finally, the note provided that all agreements in the note would bind the successors of Brooklyn.  *Id.* ¶ 15.

Dr. Muir executed the note as Brooklyn's Chief Information Officer, and it was thereafter given to Spheyr as "payee."[6]  Pl.'s Rule 56.1 Statement, Doc. 16-1 ¶ 9.  At the time that Muir executed the note on behalf of Brooklyn, Muir also had a 45% ownership interest in Spheyr, and was Spheyr's chief executive officer ("CEO").  Id. ¶ 14.  Muir was thus a partial owner of both Spheyr and Brooklyn when the note was executed.

Muir sold his stock in Spheyr to Spheyr several months after the note was executed, on December 17, 2021.[7]  Id. ¶ 29.  Thereafter on March 28, 2022, Spheyr received two $10,000 payments on the note from Dr. MacMillan on behalf of Brooklyn.[8]  Id. ¶ 30.  Under paragraph 3 of the note, these payments were to first apply to interest accrued through the date they were made, and the balance was to be applied to the principal.  Id. ¶ 32; see also Doc. 5-1 at 2 ¶ 3.

Just a few weeks later, on April 8, 2022, Muir and Dr. MacMillan sold Brooklyn to Dr. Amanda Itzkoff.[9]  Pl.'s Rule 56.1 Statement, Doc. 16-1 ¶ 33; Doc. 17-6 at 1.  Pursuant to the purchase agreement, the sellers had a duty to disclose all debt that Brooklyn would be responsible for upon acquiring ownership.  Doc. 17-6 at 6 § 4; see also Wolcowitz Decl., Doc. 23 ¶ 11 (according to Wolcowitz, "the deal was structured such that sellers . . . would disclose all

---

[6] Balinski signed the note on behalf of Spheyr.  Doc. 5-1 at 6.

[7] He sold his stock for $1,000.  Pl.'s Rule 56.1 Statement, Doc. 16-1 ¶ 29.

[8] Spheyr does not say why the two payments were made, despite the fact that the note expressly provides that no payment should be due until the maturity date.  Doc. 5-1 at 2 ¶ 1.  The only related statement by Spheyr in this regard is that "Brooklyn's payments ratified the Note . . . ."  Doc. 25 at 5 (citation omitted); see also Reply Balinski Aff., Doc. 24 ¶ 14 (Balinski stating that "the payments on the Note confirm its enforceability" and "[p]eople do not make payments on improperly established notes, or notes to which they have an objection.").

[9] The deal was structured so that MC II would purchase Brooklyn *and* MCI in exchange for $1,000,000.  Doc. 17-6 at 1.  As relevant here, Itzkoff entered into a management services agreement with Jack Wolcowitz, an asset management investor, when she was approached by Muir and his wife about the sale.  Wolcowitz Decl., Doc. 23 ¶¶ 2–4.  Wolcowitz participated in the parties' discussions regarding the sale on behalf of Itzkoff.  Id. ¶ 5.  As Spheyr states in its briefs, Wolcowitz does not clarify whether he currently holds a position in Brooklyn or MC II.  Doc. 25 at 4.

debt [that the purchaser] would be responsible for paying or otherwise satisfying, . . . thereby sparing [the purchaser] of its due diligence burdens.").[10]  When the sale took place, Itzkoff was provided with a schedule listing "priority loans" payable.  It listed three priority loans:  one from Evan Barr, one from JR Rhan, and one from "Sphere."  Doc. 17-6 at 19.  The "Sphere" loan was for $495,000.  Doc. 17-6 at 19; *see also* Doc. 17-18 (containing promissory note from MCI to Spheyr for a total of $400,000).  The schedule states that of that amount, $95,000 is money "Sphere" loaned to Owen Muir, who loaned the money to MCI.  *Id.* n.2.  It further notes that payment of the "entire $495,000" could be made "directly to Sphere."  *Id.*  Importantly, according to Balinski, this loan and its corresponding promissory note were distinct from the amount owed pursuant to the note in the instant dispute.[11]  Balinski Aff., Doc. 17 ¶ 23.  And although several additional loans were disclosed in the purchasing papers, the instant note was not included in the schedules outlining pending payable loans.  Doc. 17-6 at 14, 15, 18, 19; Doc. 22 at 7.  Additionally, according to Brooklyn, Muir did not disclose his former affiliation with Spheyr during the negotiation of the purchase agreement.  Doc. 22 at 11.

Due to the change of control, Spheyr claimed that the note was in default.  Pl.'s Rule 56.1 Statement, Doc. 16-1 ¶ 34.  Brooklyn admits that the purchase agreement triggered a default on

---

[10] Itzkoff contends that Muir needed to sell Brooklyn as soon as possible for a number of reasons.  *See* Wolcowitz Decl., Doc. 23 ¶¶ 6–11.  Indeed, according to Wolcowitz, Brooklyn was having significant difficulty covering its expenses and was the subject of a malpractice lawsuit.  *Id.* ¶ 6 ("Dr. Muir impressed upon me an eagerness to sell [Brooklyn] and he admitted the business was having significant difficulty in cover[ing] its expenses, particularly payroll.").

[11] In its opposition to Spheyr's request for a conference in anticipation of the instant motion, counsel for Itzkoff stated that "just prior to closing on the [instant] note, Muir pressured [Brooklyn] into executing the [n]ote by reminding it if a prior outstanding loan from Spheyr to [Brooklyn] in the amount of $495,000.  Consequently, [Brooklyn] was not at liberty to refuse the terms of the [n]ote while both Balinski and Muir were prepared to hold [Brooklyn] liable for other unrelated financial obligations . . . ."  Doc. 12 at 2.  Balinski addressed this in his affidavit submitted to the Court in support of Spheyr's motion.  Specifically, he stated that "counsel erroneously mention[ed] a prior outstanding loan of $495,000 from Spheyr to Brooklyn," thereafter noting that this was a *separate* "obligation" with a separate promissory note.  Balinski Aff., Doc. 17 ¶ 23.  In opposing Spheyr's motion, Itzkoff emphasizes that the instant note was thus "admittedly hidden," during the purchase negotiations, given Balinski's confirmation that the two loans were distinct.  Doc. 22 at 7.

the note, even though it was not aware of the note—or any of its terms—at the time that the purchase agreement was executed. Def.'s Rule 56.1 Statement, Doc. 21 ¶¶ 21, 34, 45. According to Itzkoff, this was an "intentional scheme" by Balinski and Muir, who never intended to repay the amount due on the note, but instead fraudulently cause a future buyer of Brooklyn to be forced to pay it. *Id.* ¶ 34.

On August 11, 2022, Spheyr provided Brooklyn with a demand letter due to its default on the Note. *Id.* ¶ 38. It demanded that Brooklyn pay $461,756.96 by August 18, 2022. *Id.* ¶ 39. Brooklyn made no payment because it had not previously been made aware of the note. *See id.* ¶ 40; Pl.'s Rule 56.1 Statement, Doc. 16-1 ¶ 40.

### B. Procedural History

Spheyr filed the instant suit on October 3, 2022, seeking to collect the amounts due under the promissory note. Doc. 1. Brooklyn answered on November 6, 2022. Doc. 9. It denied the allegations in the complaint and asserted three affirmative defenses, including usury under New York law,[12] fraud, and unconscionability. *See generally id.*

Thereafter, on December 7, 2022, Spheyr requested a pre-motion conference in anticipation of the instant motion for summary judgment. Doc. 10. The Court held a conference

---

[12] In its opposition to the instant motion, Brooklyn fails to raise its usury argument pursuant to New York law. *See generally* Doc. 22. Although it contends that "it is unclear," at this juncture, whether the note should be governed by Delaware law given its unenforceability arguments concerning the note, Brooklyn's arguments in opposition are grounded in Delaware law. *Id.* at 14 n.1; *see, e.g., id.* at 14, 15, 19, 21, 24.

As relevant here, the opposition attaches the declaration of Jack Wolcowitz, Itzkoff's asset management investor. Wolcowitz Decl., Doc. 23. It describes the parties' negotiations and emphasizes the urgency with which Muir sought to sell Brooklyn. *E.g., id.* ¶ 11. The declaration also underscores that the instant note was undisclosed at the time of Brooklyn's purchase, and the default notice on the note thus came as a surprise. *Id.* ¶¶ 18–20, 24. Finally, it describes the information that Itzkoff needs to oppose the instant motion. It notes that while Brooklyn can access "historic emails" that Muir sent using his Brooklyn email account, it is "exceedingly difficult" to find and review emails and attachments that may contain relevant negotiations concerning the note. *Id.* ¶ 26; *see also id.* ¶¶ 27–28. Additionally, Wolcowitz states that he lacks access to personal emails, text messages, and other communications that may relate to the note. *Id.* ¶ 30. Finally, Wolcowitz states that Itzkoff did not obtain copies of Brooklyn's QuickBooks account, and cannot confirm that Brooklyn received the alleged $451,000. *Id.* ¶¶ 33, 34.

and set a briefing schedule on December 21, 2022, *see* Min. Entry dated Dec. 21, 2022, and briefing was completed on March 10, 2023, Doc. 25.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set

forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

As relevant to the motion now before the Court, Rule 56(d) provides that "[i[f a nonmovant shows by affidavit or declaration that, for specified, reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).  The declaration must describe:  (1) what facts are sought and how they are to be obtained, (2) how such facts are reasonably expected to raise a genuine issue of material fact, (3) what efforts the affiant has made to obtain them, and (4) why the affiant's efforts were unsuccessful.  *Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 10 (2d Cir. 2013).  The grant of relief pursuant to Rule 56(d) is within the discretion of the district court. *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 921 F. Supp. 2d 111, 126–27 (S.D.N.Y. 2013).

Importantly, mere assertions that evidence supporting a plaintiff's allegations are "in the hands of the defendant" are insufficient to justify a denial of a motion for summary judgment under the rule.  *Lerwick v. Kelsey*, 150 F. App'x 62, 65 (2d Cir. 2005) (internal quotation marks and citation omitted).  And as relevant here, in an action on a promissory note, summary judgment is appropriate upon a showing of no material issues regarding execution and default. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Southern Coal Corp.*, No. 17 Civ. 1329, 2017 WL 5714117, at *2 (S.D.N.Y. Nov. 27, 2017) (quoting *Royal Bank of Canada v. Mahrle*, 818 F. Supp. 60, 62 (S.D.N.Y. 1993)).

Courts in this Circuit have noted that issues regarding execution and default may include: nonpayment; invalidation; material alteration without consent; absence of consideration; and wrongful negotiation of the instrument. *Hanam, B.V. v. Kittay*, 589 F. Supp. 1042, 1046 (S.D.N.Y. 1984); *see also Merrill Lynch Bus. Fin. Servs. Inc. v. Heritage Packaging Corp.*, No. 06 Civ. 3951 (DGT), 2007 WL 2815741, at *5 (E.D.N.Y. Sept. 25, 2007) (noting that summary judgment is appropriate where there is no issue of execution or nonpayment on a promissory note); *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, Nos. 21-1916, 21-2010, 2023 WL 5156690, at *8 (2d Cir. Aug. 11, 2023) (affirming the denial of summary judgment in an action seeking enforcement on a note where there were genuine disputes of material fact regarding whether mutual consideration supported the note). The enforceability of a promissory note is dictated by the law that governs the dispute. *See Tarpon Bay Partners LLC*, 2023 WL 5156690, at *8.

### B. DISCUSSION

Spheyr moves to recover the amounts due on the note following the note's acceleration, the issuance of a demand letter, and Brooklyn's failure to repay the note. Doc. 18 at 6. In its memorandum of law in opposition, Brooklyn argues that Balinski and Muir "hatched a scheme to defraud Defendant by saddling it with a hidden landmine of debt" through the undisclosed note, which it contends is unenforceable and unconscionable. Doc. 22 at 8. Brooklyn further asserts that discovery is necessary to bring out any additional evidence in support of its arguments. *Id.* at 8, 25–30; *see also* Wolcowitz Decl., Doc. 23. In this regard, it emphasizes that discovery may uncover facts regarding the negotiation and execution of the note and Spheyr's performance, as they implicate Brooklyn's affirmative defenses of fraud, anticipatory breach, and unconscionability. Doc. 22 at 25–26; Wolcowitz Decl., Doc. 23.

The Court defers ruling on the instant motion for summary judgment and directs the parties to proceed to discovery.  Considering the record before the Court at this early stage in the proceedings, Brooklyn is entitled to obtain additional facts that may be "essential to justify its opposition," including its arguments regarding the enforceability of the promissory note, specifically, absence of consideration and wrongful negotiation.  Fed. R. Civ. P. 56(d); *Kittay*, 589 F. Supp. 1042, 1046; *Tarpon Bay Partners LLC*, 2023 WL 5156690, at *8.  Brooklyn has sufficiently described the information that it seeks, and how it may possibly raise genuine issues of material fact under the applicable laws.[13]  *E.g.*, Doc. 22 at 14 (arguing that the note lacked mutual consideration under Delaware law), *id.* at 20–21 (arguing that the note's terms are unconscionable under Delaware law); *see also* Wolcowitz Decl., Doc. 23.  Additionally, it has articulated that it was not aware of the terms of the instant note when Brooklyn was acquired, nor has it received full access to correspondence related to the negotiations surrounding the execution of the note.[14]  Doc. 22 at 29.  As Brooklyn emphasizes, *no* discovery has occurred to date.  Doc. 22 at 30.

For these reasons, the Court employs its discretion to allow Brooklyn to seek additional facts in order to oppose Spheyr's motion.  *See* Fed. R. Civ. P. 56(d).

---

[13] To be sure, discovery may not ultimately result in facts that will allow Brooklyn to succeed in its opposition. However, that is not the question before the Court.  The Court is tasked with considering whether Brooklyn is entitled to engage in discovery to seek "facts essential to justify its opposition," prior to the Court's ruling on Spheyr's summary judgment motion.  *See* Fed. R. Civ. P. 56(d).  Here, Brooklyn has made a sufficient showing that such facts might indeed be found.  *See Robinson*, 508 F. App'x at 10.

[14] Brooklyn emphasizes that it cannot obtain documents relating to negotiations between Balinski and Muir that may have occurred outside of Brooklyn's email server.  Doc. 22 at 29.

## III.     CONCLUSION

For all the reasons stated herein, Spheyr's motion for summary judgment is DEFERRED until discovery is completed, at which point it may be re-filed.  By no later than September 4, 2023, the parties are directed to file, on consent, a proposed discovery plan, with all discovery to be completed by March 4, 2024.  A blank template is attached herein.

The Clerk of Court is respectfully directed to terminate the motion, Docs. 16, 17, 18.

IT IS SO ORDERED.

Dated:     August 28, 2023
             New York, New York

_____
                          Edgardo Ramos, U.S.D.J.

UNITED STATES DISTRICT COURT                                  Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

                                                                                 **CIVIL CASE DISCOVERY PLAN**
                          Plaintiff(s),         **AND SCHEDULING ORDER**

- against -

                         Defendant(s).      _____ CV _____ (ER)

-------------------------------------------------------------x

      This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The parties are free to withhold consent without adverse substantive consequences.  (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: New York, New York
_____

_____
Edgardo Ramos, U.S. District Judge